UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH LING,

                Plaintiff,                Case No. 14-cv-14505

v.                                        Honorable Thomas L. Ludington

TOWNSHIP OF RICHLAND, et al.,

                Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, DISMISSING COUNT VI OF COMPLAINT WITH PREJUDICE, AND DENYING MOTION FOR RULE 26 CONFERENCE AS MOOT**

On November 11, 2015, Plaintiff Kenneth Ling, an on-leave police officer[1] for the Township of Richland ("Township"), filed a complaint against the Township and five individual defendants, all of whom are township employees. The individual defendants are: Robert Dalton, the Township Police Chief; Renee Herhold, the Township Manager; Joel Warden, the Township Clerk.[2] Plaintiff Ling's Complaint has been twice amended and the most recent amendment was filed on April 3, 2015 with the consent of Defendants. See Pl.'s Sec. Am. Compl., ECF No. 37. Ling's Second Amended Complaint alleges seven counts against Defendants which are as follows: violation of the Family and Medical Leave Act (Count I); violation of the ADA by

---

[1] Ling's current status as a police officer with the Township is disputed in this case. Ling alleges, alternatively, that he was terminated, that he was constructively discharged, and that he is on leave and has not been returned to work despite having medical authorization to do so. At some point these discrepancies will need to be resolved. Now is not that time.

[2] Ling's Second Amended Complaint identifies ten John and Jane Does. None of the Doe Defendants have yet to be identified, however. Furthermore, the case caption also lists individual Defendants Brian Frederick, also a Township Clerk, and Daniel Press, the Township Treasurer. These individuals were included in Ling's initial Complaint, ECF No. 1, and First Amended Complaint, ECF No. 8, but were excluded from Ling's Second Amended Complaint.

conducting impermissible inquiries into medical information and attempting to compel submission to further medical testing (Count II); violation of the ADA by disclosing confidential information (Count III); unlawful discrimination, retaliation, or coercion under the ADA (Count IV); violation of Michigan's Persons with Disabilities Civil Rights Act (Count V); Breach of Contract (Count VI); and violation of 42 U.S.C. § 1983 (Count VII).

Defendants moved to partially dismiss Ling's complaint on April 21, 2015. This followed a long series of procedural two-stepping between the parties. Ling's initial complaint was filed in November of 2014. Defendant Township immediately moved to dismiss the complaint. In response, Ling amended his complaint as of right. *See* Pl.'s First Am. Compl., ECF No. 8. Defendants sought to strike the Amended Complaint, ECF No. 12, but this Court deemed the amendment timely. *See* January 30, 2015 Order, ECF No. 13. In response to Ling's Amended Complaint Defendants withdrew their pending motion to dismiss, ECF No. 15.

Defendant Township then moved once more to partially dismiss Ling's complaint. See Def.'s Mot. Dismiss, ECF No. 17. Shortly thereafter the named individual Defendants made appearances in the case and answered, each in separate docket entries, Ling's Amended Complaint. Ling then saw fit to respond to each Defendant's answer in separate docket entries. At the same time as Ling filed all of his responses to all of Defendants' answers, he also moved to further amend his complaint and also responded to Defendant Township's motion to dismiss. After the inundation of documents onto the Court's docket, briefing on pending motions was stayed so that the parties could discuss resolving the issue of Plaintiff filing a second amended complaint. The parties reached an agreement on April 1, 2015 and Plaintiff filed a Second Amended Complaint on April 3, 2015. See ECF Nos. 36 & 37. Ling's Second Amended

Complaint removed Defendants Frederick and Press from the case and consolidated issues while adding new factual allegations.

On April 21, 2015, Defendants Township, Herhold, Dalton, and Warden filed a motion for partial dismissal. *See* Defs.' Mot. Dismiss, ECF No. 38. In keeping with prior practice, each Defendant also filed an individual Answer and Ling filed a separate response to each Answer. A motion hearing was scheduled for July 14, 2015. On the eve of the motion hearing on Defendants' motion for partial dismissal, the parties informed the Court that they intended to facilitate the matter. The motion hearing was adjourned to accommodate the parties' attempt at resolving the matter. The parties were unsuccessful in facilitation and on July 28, 2015 they informed the Court that they wished to proceed with adjudication of the pending motion to dismiss. That motion is now under consideration.

## I.

Kenneth Ling is a 48 year-old resident of the Township of Richland. As of March 19, 2014, he had served in the Township of Richland Police Department for 26 years. Defendant Township of Richland is a municipality incorporated in the County of Saginaw, Michigan. Defendant Dalton is the Police Chief of Richland Township. Defendant Herhold is the Richland Township Manager. Defendant Joel Warden is the Richland Township Clerk. Ling was employed by the Township during his tenure as a police officer.

### A.

While working for the Township of Richland Police Department, Ling served as an Accident Reconstructionist and as a member of Saginaw County's "Fatal Investigation Squad." Pl.'s Compl. ¶ 20, ECF No. 37. This resulted in Ling "respond[ing] to multiple fatal and serious injury car accidents every year." *Id*. Ling alleges that his involvement with the "Fatal

Investigation Squad" has resulted in him observing particularly unsettling scenes. For example, on July 4, 1995, Ling responded to an accident where a 7 year-old boy was struck by a car. At the time, Ling's son was the same age. According to Ling, the accident was "especially gruesome." *Id*. at ¶ 18.

Following the accident in 1995 Ling "began to experience symptoms of post-traumatic stress disorder ("PTSD")[.]" *Id*. at ¶ 22. He had been dealing with these symptoms up to the time he was put on leave in March of 2014. *Id*. The 1995 accident also led Ling to experience difficulty sleeping and develop chronic anxiety and depression. *Id*. at ¶ 23. To address these issues Ling sought counseling in 2012 and 2013. *Id*. In December of 2013 he also attended a PTSD seminar. *Id*. Early the next year, he informed his primary care physician of his troubles and began counseling with a psychiatrist. *Id*.

**B.**

On March 19, 2014, Ling was off-duty. *Id*. at ¶ 24. He "spent the morning hunting with a friend and the rest of the day socializing and drinking alcohol." *Id*. Ling alleges that his blood-alcohol content was 0.24% when he left the bar that night. *Id*. He had a friend drive him home. *Id*. Upon arriving at home Ling got into an argument with his wife. Id. At the close of the argument Ling gathered his hunting gear, which included a rifle, and went into his pole barn, which Ling indicates is a form of "man cave." Pl.'s Resp. Br. 8, ECF No. 48. While heading to his pole barn, Ling's firearm discharged. *Id*. It is disputed how this occurred.

While in the pole barn Ling called his father and cousin, both police officers, and asked them to come over. *Id*. At some point, presumably after they arrived, Ling made inappropriate comments to them and Ling was taken to an area hospital. *Id*. Ling alleges that he then sobered up while at the hospital and lists his discharge date as March 24, 2014. Pl.'s Compl. ¶ 24, ECF

No. 37. Ling does not explain the reason for why it took him four days to sober up in the hospital before being discharged.

### C.

On March 20, 2014, Defendant Herhold sent a letter to Ling informing him that he was "relieved from [his] duties as a police officer of the Richland Township Police Department, effective immediately[.]" *Id.* at ¶ 25 (internal quotation marks omitted). Herhold referenced the incident in the pole barn the day before and told Ling that the incident was under investigation. *Id.* As authority for relieving Ling from his duties, Herhold cited Section 7.1 of the Collective Bargaining Agreement ("CBA") between the Township and the Police Officers Union. *Id.* at ¶ 26. Section 7.1 of the CBA provides for Just Cause termination and reads:

> The Employer shall only discipline, suspend or discharge any Employee for just cause. The Employer and the Union mutually agree in the concept of progressive discipline with respect to discipline, suspension or discharge. Any discipline, suspension or discharge must be by proper written notice to the Employee and the Union and the Employer shall cite specific charges against the Employee. Management retains the right to suspend or discharge an Officer for a major offense without first resorting to progressive discipline. Any protest of a disciplinary action must be pursued under the Grievance Procedure provision of this Agreement.

CBA, Def.'s Answer, Ex. 1, ECF No. 5-1.

Ling alleges that after the issuance of Herhold's letter, "Defendants have never given Officer Ling notice of charges against him, any explanation of evidence against him, and have never given him an opportunity to tell his side of the story regarding what happened on March 19, 2014." Pl.'s Compl. ¶ 27. ECF No. 37. Ling claims that "[o]ther than paying out accumulated sick, personal and vacation time, Richland Township has not paid [him] salary or income since March 20, 2014." *Id.* at ¶ 28. Defendants' position, according to Ling, is that Ling "was placed on a 'medical leave of absence' and there have been no disciplinary actions taken against him regarding the March 19, 2014 incident." *Id.* at ¶ 29.

**D.**

At some point after being removed from duty, Ling applied for short-term disability benefits with "The Standard", the Township's insurer, and was approved. *Id.* at ¶ 29. In the middle of June, 2014 Ling was contacted by Defendants Herhold and Dalton and "ordered . . . to 'submit a return to work certification from [his] physician.'" *Id.* at ¶ 32 (emendation in original). On June 14, 2014, the same day Defendant Herhold verbally instructed Ling to submit a return to work form, Ling gave Herhold "a copy of a 'return to work certification' signed by his treating Counselor and Psychiatrist." Id. at ¶ 33. Nine days later, on June 23, 2014, Defendant Herhold told Ling that the return to work form he submitted was unacceptable and "ordered him to direct his Counselor and/or Psychiatrist to provide her with answer [to] the following questions regarding his mental health status:

> a. A description of the condition (diagnosis) that he initially saw you for and what treatment you are receiving,
>
> b. What the current diagnosis and prognosis is,
>
> c. The reason for continuing treatment,
>
> d. The medical/psychological basis/support for the doctor's opinion that he has cleared you to return to work, and
>
> e. Whether you are psychologically/medically able to safely and properly perform the job duties of a Richland Township Police Officer.

*Id.* at ¶ 34.

In response to Defendant Herhold's inquiry, Ling provided his counseling records and a "psychiatric questionnaire" to Defendant Herhold. *Id.* at ¶ 37. The "psychiatric questionnaire" had been completed by Ling's counselor for the Standard Insurance Company. *Id.* The questionnaire provided information about Ling's counseling schedule and other information

about his psychiatric state. *Id*. at ¶ 38. It also contained a recommendation that Ling was capable of returning to work as of June 13, 2014. *Id*.

On June 14, 2015, "Ling asked to be returned to work . . . [but] Defendants refused to return him to work and refused to reinstate his pay pending further examination and inquiry into his mental health status." *Id*. at ¶ 39. That same day, the Standard Insurance Company discontinued Ling's disability benefits because he was, as of June 13, 2014, capable of performing job-related functions. *Id*. at ¶ 40.

Nearly one month later, on July 10, 2014, Defendant Herhold sent Ling a letter that indicated Ling could be a threat to himself or others and ordered that he be examined by a psychologist. *Id*. at ¶ 41. Pursuant to the letter, "Ling appeared for examination on July 21 and August 11, 2014." *Id*. at ¶ 42. Ling then sought information from Defendant Herhold about the result of the examination but did not receive an answer. *Id*.

**E.**

On August 28, 2014, Ling filed a grievance alleging that he was constructively discharged and disciplined without just cause. *Id*. at ¶ 43. The grievance was denied on September 5, 2014 by Defendant Herhold "on behalf of herself, Richland Township and Chief Dalton[.]" *Id*. She gave as reason for the denial that "Ling had not been discharged or disciplined and the Township was following the CBA regarding fit[ness] for duty evaluations." *Id*. Ling alleges that the denial did not address his suspension without pay following the March 19, 2014 incident or the issue of his clearance to work. *Id*.

After his grievance was denied, Defendants received a report from the psychologist that examined Ling following Defendant Herhold's request for such an examination. *Id*. at ¶ 44. The report of that psychologist "did not find Officer Ling unfit for duty." *Id*. at ¶ 45. The report found

that Ling "possessed the requisite mental health and thought processes needed to perform job-related functions, . . . was mentally stable, not a danger to himself or others, and not considered a safety threat." *Id*. The report also expressed concern about the maintenance of Ling's wellbeing and recommended that he seek further treatment for his PTSD and a possible drinking problem. *Id*. at ¶47.

On September 18, 2014, Ling met with Defendant Herhold and demanded to return to work but was refused. *Id*. at ¶ 48. Defendant Herhold and the Township attorney, who also met with Ling, told him that he could only return to work if he complied with the treatment recommendations made by the psychologist following the examination ordered by Defendant Herhold. *Id*. at ¶ 49. Ling was told that if he obtained another opinion deeming him fit for duty, the Township would consider returning him to work. *Id*. at ¶ 51. Despite this, Defendants were advised by the Standard Insurance Company that the Standard's physician consultant did not believe there was sufficient information to support work limitations past June 13, 2014. *Id*. at ¶ 53. Ling nevertheless underwent another examination by a different psychiatrist. *Id*. at ¶ 54. That psychiatrist deemed him capable of performing job-related functions and Ling provided that opinion to the Township's attorney. *Id*. Ling has not returned to work.

**F.**

Ling initiated this case on November 25, 2014. See Pl.'s Compl., ECF No. 1. On January 5, 2014, Ling sent a letter to the Equal Employment Opportunity Commission asserting claims of discrimination under the Americans with Disabilities Act ("ADA"). Pl.'s Compl. ¶ 58, ECF No. 37. Ling attached a copy of his initial complaint in this case to his letter to the EEOC. See Pl.'s Resp. Br., Ex. 2, ECF No. 48-2. The EEOC responded to Ling by sending him a letter with EEOC Form 5, a charge of discrimination, attached. *Id*., Ex. 4. The EEOC Form 5 "was drafted

[by the EEOC] as a result of the information provided [by Ling]." *Id*. The EEOC requested that Ling sign and return the charge, which Ling did on January 28, 2015. *See* Defs.' Mot. Dismiss, Ex. A, ECF No. 38-2. The EEOC dismissed Ling's case and closed its file on his charge because a "[l]awsuit ha[d] been filed covering same bases and issues." Pl.'s Resp. Br., Ex. 3, ECF No. 48-3. Ling received his right to sue on February 19, 2015. *Id*.

## II.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.

Defendants move for partial dismissal of Ling's complaint on three grounds. First, they argue that Ling's claims under the ADA must be dismissed because Ling did not comply with the EEOC's requirements for filing a charge of discrimination prior to initiating suit in federal court. Second, Defendants argue that Ling's Breach of Contract claim is preempted by federal

law, specifically § 301 of the Labor Management Relations Act ("LMRA"). Third, Defendants argue that Ling's 42 U.S.C. § 1983 claim should be dismissed because he does not plead sufficient facts to overcome the individual Defendants' entitlement to qualified immunity.

**A.**

Defendants argue that Plaintiff's three counts predicated on violations of the Americans with Disabilities Act should be dismissed. Defendants make two arguments in the alternative. First, Defendants argue that Plaintiff did not file a timely charge with the Equal Employment Opportunity Commission ("EEOC"). An untimely filed charge imposes a statute of limitations bar to discrimination claims, such as claims under the ADA, requiring that they be dismissed. In the alternative, Defendants argue that Ling's ADA claims must be dismissed because "Plaintiff did not include within his EEOC charge the claims he now attempts to assert against Defendants[.]" Def.'s Mot. Dismiss 22, ECF No. 38. Neither of these arguments have merit.

**1.**

Defendants' first argument for dismissal of Ling's ADA claims is that Ling did not file a timely charge of discrimination with the EEOC. "Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citing 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1)). Filing a charge of discrimination with the EEOC is a condition precedent to filing suit under the ADA. *Id*. But this condition precedent is not jurisdictional and may be waived by the Court or the parties. *Id*. Filing a charge of discrimination with the EEOC after filing suit is not fatal to a plaintiff's claim where there is no prejudice to the defendants and the charge is timely filed. *Chandler v. Vulcan Materials Co.*, 81 F. App'x 538, 541 (6th Cir. 2003).

Defendants argue that Plaintiff did not file an EEOC charge until January 28, 2015, outside of the 300-day limitations period. Defendants base this assertion on the claim that a letter sent to the EEOC by Plaintiff on January 5, 2015 does not constitute a charge for the purposes of satisfying the 300-day limitations window. Plaintiff disagrees and argues that the letter is sufficient.

Defendants' main argument regarding the sufficiency of the January 5, 2015 letter is that it is not made under oath or affirmation, a requirement for EEOC charges. See Defs.' Reply Br. 6, ECF No. 49 (citing *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 (6th Cir. 2011)). Indeed, the Sixth Circuit has held that:

> in order for an EEOC filing to constitute a "charge" that is necessary to exhaust an employee's administrative remedies under Title VII, the filing (1) must be "verified"—that is, submitted under oath or penalty of perjury, 29 C.F.R. § 1601.3(a); (2) must contain information that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," *id.* § 1601.12(b); and (3) must comply with *Holowecki*—that is, an "objective observer" must believe that the filing "taken as a whole" suggests that the employee "requests the agency to activate its machinery and remedial processes," 552 U.S. 389, 398, 402, 128 S.Ct. 1147.

*Williams*, 643 F.3d at 509. Ling's initial letter to the EEOC on January 5, 2015 complies in all respects with these requirements, except that it was not "submitted under oath or penalty of perjury." This means that the letter, at the time it was sent, was not a valid EEOC charge.

But this fact is not fatal to Ling's claims. As the Sixth Circuit pointed out in Williams, *id.*, the EEOC has promulgated regulations which allow for a charge to be "amended to cure technical defects or omissions, including failure to verify the charge[.]" 29 C.F.R. § 1601.12(b). Ling, like the plaintiff in *Williams*, later signed and verified a charge, curing any defect in the letter sent to the EEOC on January 5, 2015.[3] As the Sixth Circuit held, "[f]or the technical

---

[3] Defendants argue that Plaintiff was represented by counsel during the period he was communicating with the EEOC and attempting to file a proper charge. But this assertion carries no weight. As a sister court has noted,

- 11 -

purpose of verification, . . . Williams's second filing amended—and verified—her first filing." *Williams*, 643 F.3d at 509. The same can be said for Ling's second filing. Defs.' Mot. Dismiss, Ex. A, ECF No. 38-2. Defendants do not contend that if the January 5, 2015 letter does constitute an EEOC charge it would also be untimely.[4] Thus, Ling's EEOC charge was both timely and appropriately verified.

## 2.

Defendants' argue in the alternative that if the 300-day limitations period does not bar Ling's ADA claims, another technical defect in Ling's charge does. That is, Defendants claim that Ling did not "sufficiently identify the nature of his current claims." Defs.' Mot. Dismiss 18, ECF No. 38. As Defendants rightly note, "[a]s a general rule, a[n ADA] plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). The main concerns animating this rule are notice to employers and an opportunity for the EEOC's investigatory and conciliatory apparatus to operate. *Id*. at 362. Despite these concerns, however, the Sixth Circuit has not articulated the rule in such a stringent manner as Defendants would see it applied. As the Sixth Circuit made clear in *Younis*, the rule focuses on the notice afforded to the employer and the EEOC of the plaintiff's claims. *Id*. In *Younis*, the Sixth Circuit held that the plaintiff did not exhaust his administrative remedies

---

"[a]lthough the Court in *Williams* explained that the plaintiff was proceeding pro se when she filed her first, unverified charge, the regulation the Court relied on does not contain such a requirement." *Min Li v. Qi Jiang*, 38 F. Supp. 3d 870, 875-76 (N.D. Ohio 2014) (citing 29 C.F.R. § 1601.12(b)).

[4] Defendants also argue that there need not be any prejudice to a defendant in order for a Court to enforce the 300-day limitations period. But because the 300-day limitations period has not been violated in this case, this argument need not be addressed. In any event, the 300-day limitations period can be waived by the Court or the parties. While Defendants did not affirmatively waive their right to object to the timeliness of Ling's EEOC charge, they did consent to Ling making a second amendment to his complaint which incorporated claims that he obtained an EEOC right-to-sue letter and timely filed an EEOC charge.

because he did not give fair notice that he was pursuing a retaliation claim. Most notably, he did not even check the retaliation box on his EEOC charge.

But despite Defendants best arguments, the rule articulated in *Younis* is not one that requires plaintiffs to check the proper box on their EEOC charge or suffer forfeiting their day in court. Rather, the plaintiff in *Younis* not only did not check the retaliation box but "there [was] nothing in the narrative portion of the EEOC charge that could be interpreted as claiming retaliation, nor [was] there any language that would have put the EEOC or the employer on notice that [the plaintiff] was alleging retaliation[.]" *Id*. at 363. The rule is not a formalistic one but is one based on notice. Ling's EEOC charge varies greatly from that in *Younis*. Although he did not check the retaliation box in his amended EEOC charge, both Defendants and the EEOC were on notice of the claims Ling was pursuing. Ling's January 5, 2015 letter to the EEOC, his first, deficient charge, included a copy of his first complaint in this case. That complaint included Ling's claims in Counts II, III, & IV, all of which Defendants argue should be dismissed. In addition, this case presents the added consideration that Ling had already initiated his lawsuit in federal court before filing his charge with the EEOC, while the merits of this practice are debatable and the wisdom of permitting plaintiffs to circumvent the EEOC's procedures can be questioned, it is currently permitted in the Sixth Circuit provided the EEOC charge is filed before the 300-day limitations period runs. As a result of the unique timing presented by Ling's case, no issues of notice present themselves such that the rule articulated in *Younis* would warrant dismissal. Defendants' motion will be denied on this ground.

**B.**

**1.**

Next, Defendants argue that Ling's Breach of Contract claim should be dismissed. According to Defendants, Ling's state-law breach of contract claim is preempted by § 301 of the LMRA because his employment is governed by a collective bargaining agreement ("CBA") the interpretation of which falls within the exclusive jurisdiction of the federal courts.

Certain areas of law are so intrinsically federal in nature that they are deemed to have completely preempted all other state laws and regulations on that subject. *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) ("Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."). Any case that calls for adjudication of a parties' rights, duties, or obligations in one of these areas always presents a federal question. *Id*. "The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption[.]" *Id*. Section 301 of the Labor Management Relations Act has created one of these areas. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 558-563 (1968).

The Sixth Circuit has developed a two part test for determining whether § 301 preemption applies to a dispute. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." *Id*. When making this determination "the court is not bound by the 'well-pleaded complaint' rule[.]" *Id*. Rather, the court must "look[] to the essence of the plaintiff's claim, . . . to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id*. If the essence of a plaintiff's claim is contractual in nature, the claim is dependent on the CBA and presents a federal question. *Id*. Relatedly, if

"evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract" the claim is preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). In the second step of the inquiry, "the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id*. Similarly, if the right claimed arises out of the CBA then a federal question is presented.

The analysis in Ling's case is not so complicated. Ling does not distinguish in any way his state breach of contract claim from the requirement that there be an interpretation of the CBA. In fact, Ling concedes that interpretation of the CBA is necessary.[5] In paragraph 125 of Ling's Second Amended Complaint he states that "[t]he CBA between Richland Township and the Police Officers' Union provides for 'just-cause' discipline, suspension, discharge only." Pl.'s Second Am. Compl. ¶ 125, ECF No. 37. The CBA itself, the authenticity and veracity of which Ling does not contest, purports to "set forth the terms and conditions of employment" between

---

[5] While both parties have inundated the docket with unnecessary Answers and Responses to Answers for each and every Defendant, neither party has seen fit to attach Ling's employment contract to any of these filings, if indeed he has an employment contract distinct from the CBA, despite numerous references to it. Furthermore, the CBA between the Township of Richland and the Police Officers Union was only attached to Defendant Richland's first answer, not any of its later two answers or any of its three motions to dismiss. This document, of significant importance to Richland's claims, should be an integral part of the pleadings. Particularly where Defendant Richland believes that some of Plaintiff Ling's claims may be disposed of on the pleadings alone. Instead of ensuring that the document was attached to the most recent iteration of the parties' pleadings in this case, the parties have left it to the Court to sift through the record to locate important documentary evidence. The docket, it should be noted again, has already reached fifty entries, despite the case still being only at the pleading stage. Such docket-practice is not encouraged.

Rule 12(b)(6) motions must typically be limited to consideration of the pleadings or converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir. 2009). Defendants have, accordingly, plead in the alternative for summary relief, recognizing the possibility that information extraneous to the pleadings may need to be considered when deciding their motion. The Sixth Circuit, however, has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). There is an added consideration here, because Defendants, as explained above, did not attach the CBA to their motion to dismiss. While the preferred method of incorporating a document extrinsic to a Plaintiff's complaint is by attaching it to a motion to dismiss, where that document already forms a part of the court's record, the document may be considered without converting a motion to dismiss for a motion to summary judgment. *See Tellabs, Inc.*, 551 U.S. at 322. Here, the CBA was attached to an earlier pleading. Although that pleading has been superseded and is now moot, the CBA nevertheless remains part of the record and may be considered.

the Township and the Police Officers Union. Def.'s Ans., Ex. 1, ECF No. 5-1. Ling does not dispute that those terms and conditions apply to him. Quite the contrary, he argues that they govern his dismissal since his termination did not comport with the "just cause" provision of the CBA and his contract. *Lovely v. Aubrey*, 188 F.3d 508 at *4 (6th Cir. 1999) (holding that an employment relationship governed by a CBA is sufficient to establish preemption). Ling's breach of contract claim is preempted and will be dismissed.

**2.**

Ling makes a subsidiary argument in his response brief that somehow under the CBA the fact that he has filed a lawsuit precludes dismissal of his breach of contract claim. Ling argues that § 203(d) of the LMRA sets forth a policy of respecting and enforcing the means by which parties agree, in a CBA, to settle grievance disputes. The CBA between the Township and the Union states as follows concerning grievance procedures (sic throughout):

> Section 8 *5* .Exclusive Remedy. If proceedings involving any matter which is alleged as a grievance are instituted in any administrative action before a governmental board of agency, or in any court. then such administrative or judicial procedures shall be the sole remedy, and grounds for a grievance under this Agreement shall no longer exist.

Def.'s Ans., Ex. 1 at 8, ECF No. 5-1. According to Ling, the fact that he initiated a lawsuit here alleging breach of contract insulates his claim from dismissal. Not so.

The same section of the CBA defines a grievance as "a complaint, dispute or request which involves the interpretation, application, or compliance with the provisions of this Agreement." *Id*. at 6. First, Ling does not allege that his matter is a grievance but instead a breach of his employment contract. Claiming that his cause of action is the equivalent to a grievance under the CBA would concede preemption. Thus, assuming Ling intends to make no such concession, the CBA does not aid his argument.

Second, assuming that Ling concedes that his claim would be rightly categorized as a grievance, he does not so plead in his complaint. Instead, he pleads only a state-law breach of contract claim. Dismissal would still be required.

## C.

The third challenge made by Defendants is to Ling's claim under 42 U.S.C. § 1983. According to Defendants, Count VII of Ling's Complaint should be dismissed as to the individual Defendants because Ling does not plead facts sufficient to overcome the qualified immunity to which those Defendants are entitled.

Qualified immunity involves a three-step inquiry:

(i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). "Qualified immunity must be granted if the plaintiff cannot establish each of these elements." *Radvansky*, 395 F.3d at 302. These inquiries need not be sequentially addressed. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When a defendant argues that he or she is shielded by qualified immunity, that defendants "bear the initial burden of coming forward with facts that show they were acting within their discretionary authority at the time in question[.]" *Mackey v. Dyke*, 29 F.3d 1086, 1095 (6th Cir. 1994). Plaintiffs, nevertheless, bears "[t]he ultimate burden of proof . . . to show that the defendant is not entitled to qualified immunity." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual

basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The requirement of specificity is an important one because simply reciting a constitutional principle that has been violated reduces the qualified immunity inquiry to "a mere rule of pleading." *Bills v. Aseltine*, 52 F.3d 596, 602 (6th Cir. 1995).

In light of this framework, Defendants argument is meritless. Defendants do no more than claim, without factual support rebutting Plaintiff's assertions, that all of Plaintiff's claims are conclusory. But Plaintiff makes sufficient factual assertions to sustain, at the pleading stage, his claim that the individual Defendants violated his right not to be deprived of his property interest in his employment. Although Ling takes numerous positions throughout his complaint they are not, at this point internally inconsistent such that they are fatal to his claims. Furthermore, Defendants do not allege any facts about Ling's current job status, making sorting through his factual allegations all the more difficult.

Defendants explicitly allege in their motion that they are shielded by qualified immunity but then stake their claim for dismissal on Plaintiff's failure to allege sufficient facts in support of his 42 U.S.C. § 1983 claim. To the extent Defendants seek dismissal on the grounds of qualified immunity, the only ground they explicitly aver, their motion will be denied. They have not carried their initial burden to "com[e] forward with facts that show they were acting within their discretionary authority at the time in question[.]" *Mackey*, 29 F.3d at 1095.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Partial Motion to Dismiss, ECF No. 38, is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Count VI of Plaintiff Ling's Second Amended Complaint, ECF No. 37, is **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's Motion to Compel Participation in a Rule 26 Conference, ECF No. 53, is **DENIED as moot**. A scheduling order will be issued following the entry of this Order.


Dated: October 14, 2015                    s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge


PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 14, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager